## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **TIMOTHY E. ROSENBURG and** | ) | |
| **DEBBIE ROSENBURG,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 05-cv-0545-MJR** |
| | ) | |
| **COTTRELL, INC.,** | ) | |
| **CASSENS & SONS, INC.,** | ) | |
| **CASSENS CORPORATION,** | ) | |
| **ALLEN CASSENS,** | ) | |
| **ALLEN CASSENS TRUST,** | ) | |
| **A.C. LEASING COMPANY,** | ) | |
| **DAIMLERCHRYSLER** | ) | |
| **CORPORATION,** | ) | |
| **TOYOTA INDUSTRIES NORTH** | ) | |
| **AMERICA, INC. and** | ) | |
| **GENERAL MOTORS CORPORATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM and ORDER

**REAGAN, District Judge:**

### I.  FACTS AND PROCEDURAL HISTORY

Plaintiffs filed their initial complaint against Defendants Cottrell, Inc., Cassens &

Sons, Inc., Cassens Corp., Allen Cassens, Allen Cassens Trust, A.C. Leasing Co., DaimlerChrysler

Corp., Toyota Industries North America, Inc., and General Motors Corp. in the Circuit Court for the

Third Judicial Circuit of Illinois in Madison County on April 25, 2005. Timothy Rosenburg is an

employee of the Cassens Transport Company (which is not a party to the current litigation). He

operates trailers that haul cars, requiring the use of a chain and ratchet tie down system. He alleges

in his initial complaint that on or about April 28, 2003, and again on March 25, 2005, he suffered

injuries to his lower back and other permanent injuries while using the system in the normal course of his employment duties, that they have reduced his capacity to earn a living, and that as a result of his injuries, he will have to expend significant amounts of money on medical care and vocational retraining.  Rosenburg states that his injuries were due to a defect in the chain and ratchet system. His wife, Plaintiff Debbie Rosenburg, alleges that due to Timothy's injuries, she has lost his support and services.

In their complaint, Plaintiffs name nine defendants. The first defendant is Cassens & Sons, Inc., the alleged seller and/or distributor of the trailer. Cassens & Sons is a corporation that is a citizen of Illinois.

The second defendant is Cassens Corporation, another alleged seller and/or distributor of the trailer. Cassens Corporation is also a corporation that is a citizen of Illinois. Plaintiff alleges that Cassens Corporation used the various Cassens-named Defendants, members of the boards of same, and members of Allen Cassens' family as alter egos of itself.

The third defendant is Allen Cassens, an individual and a citizen of Illinois, and the alleged owner and lessor of the trailer.

The fourth defendant is the Allen Cassens Trust, which Plaintiff alleges placed dangerous chain and ratchet components into the stream of commerce. The Allen Cassens Trust is a citizen of Illinois.

The fifth defendant is A.C. Leasing Company, which Plaintiff alleges placed dangerous chain and ratchet components into the stream of commerce. The A.C. Leasing Company is a corporation that is an Illinois citizen. These first five defendants are collectively referred to as the "Cassens Defendants."

The sixth defendant is Cottrell, Inc., the alleged manufacturer of the trailer. Cottrell, Inc. is a corporation that is a citizen of the state of Georgia. Cottrell does business in Illinois.

The seventh defendant is DaimlerChrysler Corporation ( "DaimlerChrysler"), formerly known as Chrysler Corporation and as American Motors Corporation. Plaintiff alleges that DaimlerChrysler assumed a duty of care to him when it specified standards for the trailers that would carry the vehicles it manufactures and that it negligently breached that duty in not ensuring that the trailers were safe. DaimlerChrysler is a corporation that is a citizen of both Delaware and Michigan. DaimlerChrysler does business in Illinois.

The eighth defendant is General Motors Corporation ( "GM"). Plaintiff alleges that GM assumed a duty of care to him when it specified standards for the trailers that would carry the vehicles it manufactures and that it negligently breached that duty in not ensuring that the trailers were safe.  GM is a corporation that is a citizen of both Delaware and Michigan. GM does business in Illinois.

The ninth defendant is Toyota Industries North America ( "TINA"). Plaintiff alleges that TINA assumed a duty of care to him when it specified standards for the trailers that would carry the vehicles it manufactures and that it negligently breached that duty in not ensuring that the trailers were safe. TINA is a corporation that is a citizen of both Delaware and Illinois.

Plaintiffs filed their initial complaint (Doc.  2) in the Circuit Court of Madison County, Illinois, on April 25, 2005.  On July 5, 2005, several of the Cassens Defendants filed motions for summary judgment, alleging that they were in no way involved in any transaction placing the trailer at issue into the stream of commerce or otherwise giving rise to the alleged injuries.  These allegations have been reintroduced in Defendants' notice of removal.  Additionally,

3

TINA alleges in the notice of removal that it owed no duty to Plaintiff and thus that as a matter of law, Plaintiff cannot state a claim against it. If none of these Defendants (the Cassens Defendants and TINA) were parties in this matter, complete diversity would exist and the case would be removable to federal district court pursuant to **28 U.S.C. §§1332(a)** and **1441**, provided that it satisfies the jurisdictional amount requirement of **§1332(a)**. Generally, **28 U.S.C. §1446(b)** requires that a defendant file a notice of removal within thirty (30) days of the defendant's receipt of the initial pleading or a summons. However, when an action would not be removable upon the initial pleading but later becomes so, a defendant may file a notice of removal within thirty days of the date the defendant first ascertains that the action is removable. *Id.* In this case, Defendants Cottrell, DaimlerChrysler and General Motors allege that they first ascertained that the case was removable on July 5, 2005, when the Cassens Defendants and TINA filed their summary judgment motions. As a result, Defendant Cottrell filed a notice of removal (Doc. 1) on August 3, 2005. The other diverse Defendants consented to removal (Docs. 4-6). The removing Defendants claim that the reason they could not ascertain that the action was removable is that the nondiverse Defendants were fraudulently joined to prevent removal of the action, and that the removing Defendants first became aware of these facts upon the summary judgment motions of the nondiverse defendants.

The court ordered both sides to file jurisdictional briefs on the outstanding issues related to the motion to remand (Doc. 18). Defendants filed their jurisdictional brief with exhibits on September 16, 2005 (Doc. 22) and Plaintiffs filed theirs on October 7, 2005 (Doc. 26). Since then, Plaintiffs moved to file an amended complaint, which prompted no objection from Defendants. After the motion was granted, Plaintiffs filed their amended complaint (Doc. 43). The amended complaint more clearly specifies the allegations and reduces the confusion of the original complaint.

4

Defendants then moved to strike (Doc. 51) the amended complaint, asserting that it also makes substantial changes to the factual allegations upon which Plaintiffs' claims are predicated. Plaintiffs have responded (Doc. 66), contending that their amended complaint simply clarifies the issues and does not substantively change their claims.

## II.  ISSUES AND ANALYSIS OF THE MOTION TO REMAND

The Court must first determine whether it would have had jurisdiction over the case had Plaintiffs not amended their complaint. The Court will then take up the issue of the amended complaint, including Defendants' motion to strike (Doc. 51).

The Court must initially conduct a threshold jurisdictional review of this matter as originally pleaded. The principal purpose of the threshold review is to ascertain whether subject matter jurisdiction properly lies. *See, e.g., Wis. Knife Works v. Nat'l Metal Crafters*, **781 F.2d 1280, 1282 (7th Cir. 1986)("The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged.").** The party invoking federal jurisdiction bears the burden of demonstrating that all jurisdictional requirements have been met. *Chase*, **110 F.3d at 427.** In the case at bar, the Court is satisfied that the amount in controversy exceeds $75,000. However, two issues remain for resolution before the Court can ascertain whether it enjoys proper subject matter jurisdiction: diversity of citizenship and timeliness of removal.

## A.  COMPLETE DIVERSITY OF CITIZENSHIP

The first outstanding issue is whether complete diversity exists, which requires an examination of whether the nondiverse Defendants were fraudulently joined. Fraudulent joinder is joinder solely to defeat federal jurisdiction. *Schwartz v. State Farm Mut. Auto Ins. Co.*, **174 F.3d 875, 878 (7th Cir. 1999),** *quoting Poulos v. Naas Foods, Inc.*, **959 F.2d 69, 73 (7th Cir.**

1992)(**"Such joinder is considered fraudulent, and is therefore disregarded, if the out-of-state-defendant can show there exists no 'reasonable possibility that a state court would rule against the [in-state] defendant.'"**). *Poulos* went on to hold that:

> Out-of-state defendants seeking removal to federal district court face a very high hurdle in proving fraudulent joinder of nondiverse defendants: An out-of-state defendant who wants to remove must bear a heavy burden to establish fraudulent joinder. The defendant must show that, after resolving all issues of fact and law in favor of the plaintiff[(s)], the plaintiff[(s)] cannot establish a cause of action against the in-state defendant[(s)].

**959 F.2d at 73.** This standard is similar and can be every bit as outcome-determinative as a summary judgment or dismissal motion, and should be treated as such. The Court thus required more information than was contained in the initial pleadings to determine whether the nondiverse Defendants were fraudulently joined.

The Court examined the parties' jurisdictional memoranda, and after wading through a great deal of unnecessary vitriol, finds it highly unlikely that Plaintiffs can recover from the nondiverse Defendants. The Court notes that in reaching this determination, it did not consider the substantial number of irrelevant exhibits provided by both parties, but especially by Plaintiffs, regarding discovery issues and depositions in other cases. For example, this Court will not examine the motivations behind lawyers' objections during depositions that were taken in furtherance of past cases unrelated to the case at bar, or arguments they may or may not have made in similar cases; to do so would be inappropriate and unduly prejudicial.

1. **Cassens & Sons, Inc.**

The counts pleaded against Cassens & Sons, Inc. revolve around its alleged

6

ownership or sale of the rig which allegedly injured Plaintiffs.  Cassens & Sons is a car dealership.  Although it undoubtedly receives cars for sale which are transported by similar rigs, or even perhaps the rig relevant to the case at bar, there is no record that Cassens & Sons ever owned, leased, possessed or otherwise controlled the rig.  Plaintiffs allege that Cassens & Sons knew of the alleged design defects of the rig.  But mere knowledge of a fact without participation in the transaction(s) that gave rise to the alleged injury is insufficient basis to maintain a suit.

### 2.  Allen Cassens, Allen Cassens Trust and A.C. Leasing Company

The counts pleaded against these Defendants also involve their role as owners, lessors or distributors of the rig at issue.  But according to the title and lease documents provided as exhibits, Allen Cassens Trust and the A.C. Leasing Company are merely financial lessors, not commercial lessors, of the rig.  The distinction is important.  Defendants correctly state that a financial lessor, who purchases and leases a piece of equipment as an alternative method of financing the end user's purchase, is analogous to a bank which provides a financing loan with a security interest and not the equal of a commercial lessor who uses or places the equipment in the stream of commerce. *Rivera v.  Mahogany Corp.*, **494 N.E.2d 660, 662 (Ill.  App.  1986);** *Abco Metals Corp.  v.  Equico Lessors, Inc.*, **721 F.3d 583 (7th Cir.  1983)(interpreting Illinois law).** This is consistent with the language of **Uniform Commercial Code § 2A-103(g)**, adopted by Illinois and codified at **810 I.L.C.S. 5/2A-103(g)**, and as interpreted by other courts.  *See, e.g.*, *Cole v.  Elliott Equip.  Corp.*, **653 F.2d 1031 (5th Cir.  1981)(interpreting Texas law).**

Plaintiffs' primary argument against the individual, Allen Cassens, is that he is the sole trustee of the Allen Cassens Trust and is the president of the A.C. Leasing Company.  First, it is well established that individual directors or trustees of corporations or other legally created

entities cannot be held liable for the actions of those entities (as for piercing the corporate veil, see section 4 *infra*).  Second, for the directors or trustees to be individually liable, there must be liability to impute.  The Court can find no such liability here. As with Cassens & Sons, Plaintiffs allege that these Defendants knew of the alleged design defects of the rig.  But there is no evidence that they participated in designing or operating the rigs or that they were involved in any transactions involving the rigs in any manner which would open them to liability.

### 3. Cassens Corporation

Cassens Corporation has no physical office, no employees and no operations other than to serve as a holding company for other Cassens-related entities.  Plaintiffs name it as a Defendant on the same theory upon which they name the other Cassens Defendants.  But as a holding company, Cassens Corporation is even more remote from the transactions at issue than are the active Cassens Defendants.  Plaintiffs' jurisdictional memorandum is full of a great deal of suspicion about Cassens Corporation and the other Cassens Defendants.  But there is nothing *per se* illegal, nefarious or even unseemly about holding companies in general or about families creating corporations to structure their dealings and reap tax benefits or any other benefits which might come easier to corporations than to individuals.  Unless Plaintiffs can produce specific evidence that this corporation was involved in the design or manufacture of the rig at issue or participated in the transactions at issue, the chances that they can state a claim against this Defendant are remote at best.

### 4. The Cassens Defendants Generally (Piercing the Corporate Veil)

Plaintiffs have argued that the five named Cassens Defendants are alter egos for Cassens Transport, who was Timothy Rosenburg's employer.  Plaintiffs urge the Court to find that

they can state a theory of liability against any or all of those Defendants because they are merely a subterfuge for a single family business controlled by Allen Cassens and his family instead of truly separate legal entities.  Provided that the entities are created and operated legally, the corporate veil can only be pierced under certain conditions.  Plaintiffs cite some cases that adequately discuss these circumstances, such as ***In re Estate of Wallen*, 633 N.E.2d 1350 (Ill.  App.  2d Dist.  1994)** and ***Falcon Assocs., Inc.  v.  Cox*, 699 N.E.2d 203 (Ill.  App.  5th Dist 1998)**.

   The key problem with Plaintiffs' argument is that they have failed to name as a defendant the entity which might actually bear direct liability and for which they claim the five named Cassens Defendants are alter egos.  Plaintiffs have omitted Cassens Transport Company, Mr. Rosenburg's employer, as a defendant because the Illinois Worker's Compensation Statute, **820 I.L.C.S. 305/1 *et seq.***, precludes recovery against Mr. Rosenburg's employer.  It is well-settled law that imputation of liability inheres imputation of defenses; ***see, e.g.*, *Hayden v.  Alton Nat'l Bank*, 29 Ill.  App.  458, 463 (4th Dist.  1888)**, so the statute also precludes recovery against any of his employer's alter egos, and eliminates them all as possible parties.

  **5.  TINA**

   Like Cassens Corporation, TINA is a holding company.  It is related to another division of Toyota, which may or may not be a citizen of Illinois, that manufactures vehicles which travel on Cottrell-designed and built rigs and which are carried by Mr.  Rosenburg's employer. TINA is one of several automobile manufacturing companies listed as Defendants on the theory that they were negligent in not ensuring that their cars were transported on safe rigs.  That theory will not be discussed in this order. Plaintiffs must have the opportunity to name the proper Defendant. TINA will be dismissed upon proof that it has disclosed to Plaintiffs the proper Defendant to name.

## B.  TIMELINESS OF REMOVAL

The second outstanding issue is whether the diverse Defendants satisfied the 30-day timeliness requirement of **28 U.S.C. §1446(b)**.  But that same statute allows removal after 30 days if the removing defendant discovered at some later time that the action was removable.  Even assuming *arguendo* that the nondiverse Defendants were fraudulently joined, it was initially unclear to the Court that the diverse Defendants could not have ascertained within thirty days of the initial pleading that the case might be removable to federal district court.  The Court ordered Defendants to provide an explanation as to why they did not timely remove.

The case was originally filed in state court on April 25, 2005.  However, it was not until July 5, 2005 that all of the nondiverse Defendants had filed motions for summary judgment.  Because removal would not have been proper with any nondiverse Defendant properly in the case, it was not until this date that the diverse Defendants could have known that the case was eligible for removal.  Thus the 30-day limit began to run on July 5, 2005.  Defendants filed their notice of removal on August 3, 2005.  Thus removal was timely.

Combined with the Court's findings in section A *supra*, the Court is satisfied that removal was proper prior to the amendment of the complaint.

## C.  DEFENDANTS' MOTION TO STRIKE

Defendants did not originally object to Plaintiffs' motion for leave to file an amended complaint (Doc.  31).  In that motion, Plaintiffs indicated that they would be adding a claim for punitive damages.  In the amended complaint Plaintiffs actually filed (Doc.  43), Plaintiffs increase the number of counts from thirteen to nineteen and added substantial material.  Protesting that the amended complaint as filed was well outside the leave granted by the Court, Defendants moved to

10

strike the amended complaint (Doc. 51). In their motion Defendants also opined that the complaint was amended solely to avoid the possibility that the Court might have denied their motion to remand based on the complaint as it stood at the time of their motion.

### 1. Standard for Motions to Strike

Motions to strike are governed by **Fed. R. Civ. P. 12(f)**. That rule states that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are disfavored and are rarely granted. ***See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *see also Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991), *cert. denied*, 504 U.S. 957 (1992).** Thus this Court will not strike the complaint but will consider the propriety of the amendments below.

### 2. Whether the Amended Complaint Defeats the Court's Jurisdiction

Typically, when a case is removed to federal court on the grounds of diversity of citizenship, jurisdiction must be determined *as of the moment of removal*. ***See, e.g.*, *Tropp v. W.-S. Life Ins. Co.*, 381 F.3d 591, 595 (7th Cir. 2004); *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 429 (7th Cir. 1997).** However, even if a district court initially determines that it has jurisdiction, under **28 U.S.C. § 1447(c)** it may remand a case at any time before a final judgment is entered, if it becomes apparent that the court lacks subject matter jurisdiction. ***See also Adkins v. Ill, Cent. R.R. Co.*, 326 F.3d 828, 841 (7th Cir. 2003).**

Here, Plaintiffs have neither changed the amount sought nor added or removed parties. They have only changed somewhat the nature of the claims they make against parties already included. The question then is whether an amended complaint may be considered if it

11

defeats the court's preexisting jurisdiction only by changing the claims. This is a narrow and sticky question. The Court has found no case directly on point.

There are cases which have addressed similar situations, however, which point in both directions. It is clear that a plaintiff may not add *parties* solely to defeat diversity jurisdiction. **28 U.S.C. § 1447(e).** But if the party was added by defendants, the mere addition of claims against the third-party defendant does not defeat jurisdiction where Plaintiff also sues that party. ***See, e.g.*, *Town of Gordon v. Great Am. Ins. Co.*, 331 F. Supp. 2d 1357 (M.D. Ala. 2004).** The Supreme Court has ruled that if jurisdiction is based on a federal question, with state law claims also in federal court pursuant to the doctrine of pendent jurisdiction, post-removal amendment of the complaint to remove the federal question gives the district court *discretion* to remand the case back to the state court. ***See Carnegie-Mellon v. Cohill*, 484 U.S. 343, 357 (1988).** Shortly after that ruling, Congress amended § 1447(c), and some courts have interpreted the change to mean that such a case *must* be remanded. ***See, e.g.*, *Goodman v. Wal-Mart Stores, Inc.*, 981 F. Supp. 1083 (M.D. Tenn. 1997).** Other courts are unconvinced of a clear Congressional intent and have ruled that such a case may remain in federal court. ***See, e.g.*, *Parker v. U.S. Dep. Of Hous. & Urban Dev.*, 252 F.3d 663 (2d Cir. 2001).** The Second Circuit's approach seems more convincing, especially considering that in 1990 Congress passed **28 U.S.C. § 1367(c)(3)**, which gives district courts the *discretion* to decline to exercise its supplemental jurisdiction if its original basis for jurisdiction is eliminated. Either way, it is clear that in no case can a complaint be amended *solely* to defeat federal jurisdiction. ***See, e.g.*, *Halkett v. Bridgestone/Firestone, Inc. (In re Bridgestone/Firestone, Inc., ATX, ATX II, & Wilderness Tires Prods. Liab. Litig.)*, 128 F. Supp. 2d 1198, 1201-02 (S.D. Ind. 2001); *Johnson v. First Fed. Sav. & Loan Ass'n*, 418 F. Supp. 1106, 1108 (E.D. Mich. 1976).**

12

In considering whether to allow the amendment complaint in the context of a remand motion, a district court should consider the plaintiff's motivation for the amendment. ***See, e.g.*, *Webster v. Black & Decker, Inc.*, 2005 U.S. Dist.  LEXIS 31658 (W.D. Wis.  December 6, 2005); *Goutanis v.  Mut.  Group (US)*, 1995 U.S. Dist.  LEXIS 2285 (N.D. Ill.  1995).**

In the case at bar, the Court notes that it first ordered jurisdictional memoranda on August 26, 2005 (Doc.  18).  On August 31, 2005, Plaintiffs moved to remand the case to state court (Doc.  19).  After both parties filed their jurisdictional memoranda, on November 2, 2005 Plaintiffs moved for leave to file their amended complaint (Doc.  31).  As noted, the amended complaint (Doc.  43) goes well beyond the boundaries of the proposed amended complaint.  Additionally, the amended complaint seems tailored to obviate the points Defendants made in their jurisdictional memorandum.  It would be simply unfair for the Court to allow Plaintiffs to amend their complaint to counter Defendants' jurisdictional memorandum in case their own jurisdictional memorandum is unpersuasive.  Thus the amended complaint cannot assist Plaintiffs in their quest to remand the case.

### 3.  Propriety of the Complaint as Amended

Though the Court has ruled that it will not consider Plaintiffs' amended complaint in the context of the remand motion, there remains outstanding Defendants' motion to strike the complaint (Doc.  51).  Once the litigation is pared down to only the proper parties, justice requires that Plaintiffs be allowed to amend their complaint so as to more fully outline their claims against the valid Defendants.  **Fed.  R.  Civ.  P.  15(a).** Thus the Court will allow the amended complaint to stand to the extent that it pleads claims against parties which will remain after this order is entered.

### III.  CONCLUSION AND ORDER

For the reasons stated above, the Court **TERMINATES** Cassens & Sons, Inc., Cassens Corporation, Allen Cassens, Allen Cassens Trust and A.C. Leasing Company as Defendants and **DISMISSES** Counts IV, V, VI, VII, VIII, IX, X, XI, XIV, XV and XVI of Plaintiffs' amended complaint (Doc.  43).  The Court further **DISMISSES** Counts XVIII and XIX of Plaintiffs' complaint to the extent that they refer to Cassens & Sons, Inc., Cassens Corporation, Allen Cassens, Allen Cassens Trust, A.C. Leasing Company and TINA. Defendant TINA is hereby **ORDERED** to identify for Plaintiffs the proper Toyota-related entity **on or before April 14, 2006** in order to be dismissed from the case.  Thereafter, Plaintiffs may move for leave to file a second amended complaint adding this entity as a Defendant. The Court further **DENIES AS MOOT** the motions filed by these now-terminated Defendants (Doc.  35, 55, 68, 82, 83, 84, 85, 86, 87 and 95). The Court further **DENIES** Plaintiffs' motion to remand (Doc.  19).

Finally, the Court **DENIES** Defendants' motion to strike (Doc.  51) the remaining portions of Plaintiffs' amended complaint.  The amended complaint remains, with counts and parties viable as follows:

| Party | Applicable Counts |
|---|---|
| Cottrell, Inc. | I, II, III, XVIII, XIX |
| DaimlerChrysler Corp. | XIII, XVIII, XIX |
| General Motors Corp. | XII, XVIII, XIX |
| Toyota-related entity to be named by TINA | XVII, XVIII, XIX |

IT IS SO ORDERED.

DATED this 15th day of March, 2006.

s/Michael J.  Reagan
MICHAEL J. REAGAN
United States District Judge